# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| Dirk Davis | ) Case No. 8:18MJ1303MAP |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 2, 2018__ in the county of __Hillsborough__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(c) | Using, carrying, and brandishing a firearm during, in relation to, and in furtherance of a crime of violence. |

This criminal complaint is based on these facts:

The defendant used, carried, and brandished a firearm while committing an armed robbery of the Seminole Hard Rock Casino, which participates in interstate commerce. The defendant unlawfully stole $20,000 belonging to the Seminole Hard Rock Casino from an employee of the casino, against the employee's will, by brandishing the firearm, causing the employee to fear for his life and physical safety, all in violation of 18 U.S.C. §§ 1951 and 924(c).

☑ Continued on the attached sheet.

_____
Complainant's signature

FBI Special Agent Steven Thames
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: __03/15/2018__

_____
Judge's signature

City and state: __Tampa, FL__   United States Magistrate Judge Mark A. Pizzo
_____
Printed name and title

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT FOR DNA EVIDENCE

I, Steven G. Thames, being duly sworn, depose and state the following:

## Introduction and Agent Background

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to the Tampa Division. I have been employed as a Special Agent with the FBI for 19 months. Prior to becoming a Special Agent, I was a former Intelligence Analyst with the FBI. I served as an Intelligence Analyst under the Domestic Security Alliance Council in a liaison, training, and intelligence-sharing capacity. I also served in the Weapons of Mass Destruction Directorate under the Critical Infrastructure Cell.

2. In connection with my official duties as a Special Agent with the FBI, I investigate a variety of criminal violations of federal laws, including crimes of violence, firearms, and national security offenses. As such, in connection with my official duties and as defined by 18 U.S.C. § 2510 (7), I am "an investigative or law enforcement officer of the United States," empowered by law to enforce violations of federal criminal laws and duly authorized by the Attorney General to request a search warrant. See also Fed. R. Crim. P. 41(a)(2)(C).

## Statutory Authority

3. I submit this affidavit in support of a criminal complaint charging that on February 2, 2018, Dirk Lawrence DAVIS committed an armed robbery in which he used, carried, and brandished a handgun to an employee of the Seminole Hard Rock Casino, which participates in interstate commerce, while demanding $20,000

of the casino's money. DAVIS' actions caused the casino employee to fear for his life and physical safety and therefore compelled the casino employee to give DAVIS $20,000 of the casino's money against his will. The defendant's actions violated 18 U.S.C. §§ 1951 and 924(c). I seek a criminal complaint charging the defendant with violating 18 U.S.C. § 924(c) alone.[1]

4. The facts in this affidavit come from my personal observations, my training and experience, information obtained from other agents and witnesses, the physical evidence gathered in this case, and my review of law enforcement reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. I submit only those facts believed to be relevant to the determination of probable cause; this affidavit should not be construed as a complete statement of all the facts of the investigation or all of my knowledge about this matter.

## Statement of Probable Cause

5. On or about February 2, 2018, an armed robbery occurred at the Seminole Hard Rock Hotel and Casino, located at 5223 Orient Road in Tampa, Florida at or around 2:00 AM. This location is within the Middle District of Florida.

6. The Seminole Hard Rock Hotel and Casino participates in interstate commerce in multiple ways. The Seminole tribe owns and manages the Hard Rock

---

[1] Based on this conduct, the United States likely will seek to indict the defendant for violating both 18 U.S.C. § 924(c) and 18 U.S.C. § 1951 (Hobbs Act robbery); however, for procedural reasons the United States only seeks to charge the first of these offenses via criminal complaint.

brand, which is carried on hotels, casinos, and restaurants throughout the United States and the world. As such, the Seminole Hard Rock Hotel and Casino is not only a manifestation of that brand but also participates in interstate and international commerce by using consistent branding and shared marketing materials. For another example, the hotel uses supplies and sells items that have traveled in interstate commerce prior to being used or sold in the hotel.

7. A cashier in the poker room at the casino reported that at approximately 2:00 AM, a black male in his mid to late twenties, wearing a black sweatshirt with gray sleeves, sunglasses with stickers on them, and latex gloves, approached his teller window. The man, later identified as Dirk Lawrence DAVIS, pulled a silver semi-automatic handgun out of his pocket, brandished it to the cashier, and stated "I don't want to cause a scene . . . I want hundreds." The cashier pulled out two "straps" of hundred dollar bills, containing a total of $20,000, and handed the money to DAVIS, who took the money and exited the poker room on foot. Witnesses last observed DAVIS fleeing south on Orient Road on foot in the direction of the Florida State Fairgrounds.

8. The casino's surveillance video system captured video footage of the armed robbery, including extensive video footage of the suspect prior, during, and after the crime.

9. Despite canvassing the area with K9 assistance from the Hillsborough County Sheriff's Office ("HCSO"), the Seminole Police Department ("SPD") officers searching for the robber, DAVIS, could not located him. They did find, however,

items that he appeared to have dropped during his flight from the scene. Along the road they believed the robber fled down, approximately 416 feet from the intersection, officers discovered a pair of black latex gloves on the sidewalk next to a City of Tampa Sanitation drain. In the same area, officers found a pair of black sunglasses with stickers on both lenses. SPD detectives photographed and collected the gloves and sunglasses.

10. FBI Tampa took possession of the gloves and sunglasses and submitted the evidence to the FBI Laboratory, located in Quantico, Virginia, for forensic examination.

11. The casino provided portions of the surveillance video depicting the robbery to local news organizations, which broadcast stories about the crime featuring portions of the surveillance footage.

12. In response to seeing the television news reports, three separate concerned citizens (RB, KA, and ML) called a law enforcement tip line and provided information that aided in the identification of DAVIS. Two of these witnesses, RB and KA, identified DAVIS in a sequential photo lineup and from photographic stills drawn from the casino's surveillance footage. They were interviewed in person at different locations. Both RB and KA stated that they have known DAVIS well for several years, though RB and KA do not know each other. ML, whom I interviewed by telephone, knew DAVIS from ML's place of employment but did not know DAVIS well. ML identified DAVIS in the casino's video surveillance footage.

13.     RB stated he has known DAVIS for several years. RB saw the news report of the robbery and immediately recognized DAVIS as the robber. RB identified the black hooded sweatshirt with gray sleeves as the same sweatshirt that RB had seen DAVIS wear previously. RB stated that DAVIS owed money to him and several of his friends. RB further stated that on or about February 3, 2018, the day after the robbery, he received a phone call from one of those friends stating that DAVIS had paid RB's friend double, in $100 bills, what DAVIS owed. RB also stated that his friend told him that DAVIS was going around paying off debts to other people as well, telling them that he had just obtained money on Friday, the same day of the armed robbery. RB stated that DAVIS had a reputation for stealing money from other people, including DAVIS's ex-girlfriend. RB also stated that DAVIS had recently deleted everything from his Facebook account.

14.     RB identified DAVIS in a sequential photo lineup provided by the SPD and stated that DAVIS lived with his mom and sisters at 3010 North 44th Street, Tampa, Florida. RB had been to DAVIS's house before and was familiar with the residence's location and occupants.

15.     KA stated that he received a phone call from DAVIS shortly after the casino robbery took place on February 2, 2018 at or around 2:00 AM. DAVIS indicated to KA that he needed a ride to get away from the vicinity of the casino. KA received over thirty phone calls and text messages from DAVIS asking where KA was and conveying these same sentiments. KA changed his phone number and blocked DAVIS from his contact list. On or about February 4, 2018, KA began

receiving phone calls from DAVIS at KA's place of employment trying to contact KA.

16. KA positively identified DAVIS in a sequential photo lineup provided by the SPD. Furthermore, KA stated that DAVIS was at his place of employment on or about Wednesday, January 31, 2017 (two days prior to the armed robbery) at or around 6:00 PM wearing the same black sweatshirt with gray sleeves that the casino's surveillance video footage shows the robbery wearing.

17. ML stated that he received a call from DAVIS on or about February 4, 2018. DAVIS was trying to get in contact with one of ML's friends. ML stated that he did not know how DAVIS obtained his phone number, as he did not hang out with DAVIS socially and had never provided DAVIS with his number. ML explained that was a regular client at his place of employment. ML stated that he saw the news report of the robbery and immediately recognized DAVIS as the robber. While on the phone with ML, DAVIS stated that he wanted to come by ML's place of employment; ML told him that it would not be in his best interest to do that because everyone knew DAVIS was the person who robbed the Seminole casino. ML told DAVIS that he wanted nothing to do with DAVIS or the armed robbery. DAVIS never denied his involvement in the armed robbery while on the phone with ML.

18. The cashier, however, could not positively identify the robber after viewing a sequential photo lineup, which contained a picture of DAVIS.

19. On February 5, 2018, law enforcement officers executed a search warrant at DAVIS's residence, which belonged to his mother and where he lived with his two sisters. Inside a trashcan located outside of the home, officers found a pair of black sneakers that appeared to match the shoes that the surveillance video shows the robber wearing.

20. Law enforcement officers separately interviewed the defendant's mother and two sisters. Each of DAVIS's three family members identified him as the robber after viewing photographic stills from the casino's surveillance video.

21. One of DAVIS' sisters also stated that she bought DAVIS the jacket he was wearing in the casino surveillance video.

22. DAVIS's mother also stated that DAVIS had called her on Saturday, February 3, 2018, needing a ride home. She stated that she went to a motel in Tampa, and picked up DAVIS, and brought him home. She said that DAVIS had hundred dollar bills in his possession that he claimed came from his income tax return. She said that DAVIS has been in trouble with the law previously and that she knows DAVIS to be a liar. DAVIS's mother provided detectives with the name and address of DAVIS's girlfriend, who lives in Jacksonville, Florida.

23. On or about February 6, 2018, law enforcement officers with the SPD and United States Marshals Service ("USMS") tracked DAVIS first to Jacksonville, Florida and eventually to Georgia, where Marshals arrested him. SPD detectives attempted to interview DAVIS, but he responded, "I know why you're here and I want a lawyer," which ended the interview.

24. DAVIS is currently confined in Orient Road Jail located at 1201 Orient Road, Tampa, Florida 33619.

## Conclusion

25. For the reasons set forth above, probable cause exists to believe that DAVIS committed an armed robbery in which he stole $20,000 from the Seminole Hard Rock Casino, in violation of the Hobbs Act, 18 U.S.C. § 1951, and used, carried, and brandished a firearm during or in furtherance of that crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

_____
Steven G. Thames, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 15 day of March, 2018.

_____
MARK A. PIZZO
United States Magistrate Judge